25-211. Again, we will give counsel a minute to get up here, to get settled at the counsel table, and just give us a high sign when you're all settled and ready. Okay. Okay. Let me just ask Ms. Parks, I don't see any indication that you've asked to reserve any time for rebuttal. I just wanted to clarify. Are you? Would you like to? Oh, thank you, Your Honor. Yes, I tried to reserve three minutes. Perfect. I just want to make sure my notes were correct. I appreciate that. Thank you. No, please go ahead. Whenever you're ready. Thank you, Your Honor. Good morning. May it please the court, my name is Carrie Parks and I'm here today with my client, defendant, appellant, John Arthur Hanratty. We believe the simplest path to resolving this interlocutory appeal is just to compare Section 1956, or the classic money laundering statute, with the statute that my client's actually charged with violating, Section 1957. Section 1956 includes a provision that explicitly allows pretrial restraint to preserve an eventual criminal forfeiture after conviction. But my client is not charged with violating Section 1956. He's charged with violating Section 1957, which contains no such pretrial restraint provision. So for that reason alone, we think that's really the easiest way to deal with this interlocutory appeal, to reverse the order, to vacate what we've been calling the PIRO internally, the post-indictment restraining order. I will say that in preparing for today's oral argument, if we try to put ourselves in your shoes, what are all the questions you're going to ask me? And the question that jumped out at me is, okay, in Section 982B1, which is a provision of the criminal forfeiture statute, that's the one that includes this reference in the phrase, the forfeiture including seizure and disposition, etc. So those five words seem to jump out a little bit, and maybe are the reason for how we got here today. So the question that jumped out at me that I'd like to close more firmly than maybe we did on the papers is, why is it that those words don't mean that Congress actually intended for pretrial restraint to be allowed under the criminal forfeiture statute? Now, I didn't address that more thoroughly in the briefing, because frankly, this court actually already acknowledged and accepted our version of this argument in Watts, but it was in dicta. The court, you know, it didn't seem like the questions had really been squarely presented. And in Watts in 2015, this court said, and I quote, the procedure surrounding forfeiture under Section 982A2, including, quote, any seizure and disposition of the property and any related judicial or administrative proceeding are governed by Section 853. So again, just to close the loop on that, in Watts in dicta, this court assumed, hey, 982B is just telling us what procedures to apply after conviction in that final forfeiture order. So, you know, but putting Watts to the side, why are the words seizure and disposition relevant to criminal forfeiture? I think if we look back at Section 853, we get a really clear picture. And actually, you know, I know actually all three of you have an extensive experience in federal criminal practice. And you're well aware that after conviction, forfeiture is really a two-stage process under Rule 32.2, right? First, after you have a conviction, the district court can enter a preliminary order of forfeiture. At that stage is what triggers the government's ability to now go ahead and seize and dispose of that forfeited property. And then, and that also triggers a third party's right to come in and say, hey, I'm the innocent owner of some of the property you restrained. Let me have a shot and file a petition. So 32, again, Federal Rule of Criminal Procedure, 32.2 B and C deals with that procedure. And again, uses that language of seizure and disposition. We also see that language again in the advisory committee notes from 2000 on that same rule that talks about this post-conviction seizure, post-conviction disposition. But- So you're saying that that's a term of art as used in the federal criminal rules exclusively for post-conviction, you're saying? Well, I'm not saying that the words seizure and disposition never mean anything else in any other context. I am saying- Seizure is just taking something. Exactly. Seizure itself doesn't have the connotation of a finality at all, actually. Seizure usually suggests some preliminary taking that then has to be adjudicated, whether for forfeiture purposes, whether for anything else. Yeah, exactly, your honor, exactly. I'm not quite sure you're, just explain to me, help me out a little bit more with the analogy of the federal rules. Sure. Well, I was using the federal rules as an example of another place where we see in the rules themselves and also the advisory committee explaining, here's how forfeiture works. Here are the mechanics you apply. First, there's a conviction. Then the district court orders a preliminary forfeiture order. That issuance of the order in 32.2 BE, there's a subsection called seizing property. And so the rules go on, I won't just read them into the record, but say, okay, now that you've got a preliminary order, the AG can go out and seize the property, take measures to dispose of the property. So that's in the rules. But to take it back to the statutes that we're dealing with here, right, 982B takes us again, it points us to, it says, go look at section 21 U.S.C. 853 for the mechanics of how to do the forfeiture. So when we look at 853, I'd like to direct your honor's attention to two particular subsections of section 853. Subsection 853G is titled execution. And subsection 853H is titled disposition of property. And I don't want to, I could, if you'd like me, I could read the whole chunks of each particular subsection in here. But section 853G applies explicitly, again, after conviction, after that preliminary order of forfeiture. And subsection 853G is where we see that seizure language. So, for example, that section begins by saying, upon entry of an order of forfeiture under this section, the court shall authorize the attorney general to seize all property ordered or forfeited, etc., etc., right? So-  And then, well, I think- Hang on. Yes. I mean, I get it that you're saying, look, there's a subsection of 853 that talks, uses the word seizure. Right. And in this particular subsection, G, we're talking about after the fact. After the fact, right. After the conviction, all that. Right. And that's fine. They use the word seize there. Yep. And I guess you're arguing, well, that means seize should meant to suggest something that happens after the conviction. But what do you do about the preceding paragraph, F, that talks about it getting worn up, seizure, that does not look to me like it's a post-conviction thing. But we're still using the word seizure. I agree, Your Honor. Am I reading F wrong? Is F only a post-judgment thing? I believe F, that's the warrant provision. Yeah. That's talking about where there's probable cause. Yeah. I believe that F doesn't necessarily apply in the post-conviction context. It could.  But it could go both. I understand the argument to say, look, the word seizure is generally used in a post-conviction setting. That's what you should understand it to mean. The problem is that if you're looking for textual evidence in 853, the very word seizure is also used in a pre-conviction restraining sense. So it seems to me that the textual evidence from 853 is that the word seizure is a broad and generic term, as one might think under the Fourth Amendment, which is taking control of the assets away from the person and putting the control in the hands of the government, which is, I think, how we normally think of the word seizure as having a more generic term, which is not temporally linked to a particular phase of the case. So how do you deal with F? If you point to G, I get it, but then you have to also look at F. Yes, Your Honor. That's a great question. And if I implied that I was saying seizure generally means that post, that's not what I was trying to say with that, so my apologies. What I think my point is is that we still have to look back at 982B1 and how is that word seizure used, right? So 982B1 says the forfeiture of property, including any seizure, et cetera, et cetera. And so what we're saying is – What do you do with the – if I can – I'm going to pronounce it wrong. Resmilovich? Resmilovich, yeah. Well, I don't know. We have that long footnote that seems to distinguish this situation from, I think it's 2461, and say, well, well, well, 982, there I can see how it involves and authorizes pretrial restraint. In fact, it would be weird to read it any other way. Yes. But we reached this different conclusion for 2461. How do you deal with our analysis there? Yeah, I think a few ways, right? First of all is that the language in Resmilovich that seemed to be material to this court's decision at the end of the day was this upon conviction, et cetera, shall be sentenced, et cetera, right? And we see that same language here in 982B. I mean it's titled criminal forfeiture. Resmilovich says multiple times forfeiture means post-conviction. That's necessarily where we're going. And the other point, of course, is that- But what do you do with the language in the footnote that says and 982 seems to be one of those unique statutes that does make reference to things like seizure? I think there's two parts to the short answer, Your Honor, right? One is in Resmilovich, this court, and not the footnote, but in the body, said we're not deciding this question today. There could be arguments pro or con either way. I get it. I get it. We didn't decide it. They didn't decide it. They mapped out a theory that seemed to very much, in this case, be driving in the government's direction. And I guess I'm saying what's wrong with what we did map out in the dicta in Resmilovich's footnote? Well, I think two parts. The second part of the easy answer is in the Watts dicta seemed to already push that footnote aside and say, nope, this is about post-conviction forfeiture. And then the sort of first principles argument, Your Honor, as I see you've been going over, I hope you don't mind that I've been answering. Let me take another 30 seconds to answer that, and then we'll see if my colleagues have anything. First principles, this is a classic plain language statutory issue. The statute is titled criminal forfeiture. This court, the Supreme Court, and all the courts that matter have said just because Congress authorizes post-conviction forfeiture doesn't mean you have an automatic right to pretrial restraint, right? So these are different words that do not mean the same thing. The second point is the grammar nerd point, which thankfully we're lawyers, so hopefully that's persuasive, is looking at the structure of B-1. You have the independent clause, the forfeiture shall be governed by, right? And the dependent clause, which is where you see including any seizure. So what this really is is the including any seizure is giving you an example. You could say, what about the canon against surplusage? I'd say that the most on-point Supreme Court case I've found that deals with a similar issue is called Chickasaw Nation versus United States. The site there is 534 U.S. 84. In that case, the shortest version is that SCOTUS was dealing with this parenthetical that began with including 1, 2, 3, 4, 5. It was listing examples. It got up to the Supreme Court because one of the examples made no sense in the context of that particular statute. And the Supreme Court at the end of the day said, you know what? This just might have been a mistake, but we need to look at the statute as a whole, the statutory scheme as a whole. The statute as a whole is about how to, in that situation, report taxes that are due from Indian gambling. In our situation, the title of the statute, how B-1 is written just grammatically, it's all about forfeiture. And again, I circle back to this 56 says you can do pretrial restraint. 57 does not.  We've kept you up past your time. Thank you, Your Honor. I don't think we have any questions for you right now, but we'll see you again in rebuttal. Why don't we hear from, let's see, we have AOC Chan for the government. Good morning. May I please the court? My name is Andrew Chan, and I represent the United States in this appeal, as I did during the Monsanto hearing before Judge Schofield. And I think we actually have to start with the baseline question of whether or not the defendant is even entitled to be here on interlocutory appeal and to challenge the Monsanto hearing, given that they are unable to really show any Sixth Amendment claim here. I think one of the things that Ms. Parks has not acknowledged here is that in order to trigger a Monsanto hearing, the defendant does have an obligation to show that there is a Sixth Amendment prejudice. And here, there is no Sixth Amendment claim because the defendant is being represented by the counsel of his choice. You're not suggesting we lack jurisdiction, are you? No, what I'm suggesting is that— You're suggesting it's a logically precedent question that we ought to determine first? Yes, that is correct. Under this— Is there a requirement that we would necessarily have to proceed in that order, or no? Yes, I believe that under this court's own decision and Monsanto and its progeny, the decision has already been made that in the ordinary case, a pretrial restraining order and questions of forfeiture, those questions are reserved for the end of the criminal case, when the defendant will have a full opportunity to have a hearing before the district court judge after sentencing to challenge any forfeiture. And because of the government's interests and needs in making sure that it can restrain seizable assets at the beginning of a case to make sure that a defendant doesn't spend somebody else's money, the balance has been struck that in order for the defendant to challenge the restraining order at this early stage in the case, they have the affirmative obligation to show, and it's an evidentiary showing. The defendant has to make a showing that the restraining order in this case is actually impacting his ability to mount a defense. And here, the defendant isn't able to make that showing because Ms. Parks is representing the defendant under the Criminal Justice Act. And there's no evidence in the record that the Criminal Justice Act funds are not serving as a sufficient alternative bucket of funds, which are impacting his Sixth Amendment rights. Therefore, the appeal should be dismissed? That's correct. The appeal should be, the decision of the district court should be affirmed because there is no Sixth Amendment prejudice here. There is no right to have a Monsanto hearing when you're being represented by counsel of choice, and the restraining order isn't otherwise having any impact on the defendant's ability to mount a defense. You're not saying the appeal is improper. You're saying the motion in the district court was improper. That is correct, that the ability to even raise this Monsanto issue at this posture is not appropriate. The only evidence of any Sixth Amendment prejudice in the district court record was in a letter that Ms. Parks filed during a motion for a stay of trial, which is at Docket Entry 92. In that letter, she broadly claims that the restraining order has had prejudice on her ability to fund witness travel, for investigative work, and to hire other attorneys that she would like to hire. She also claims broadly that the CJA rates in this case are insufficient because it's forcing her to balance her work with the defendant, with the other paying cases that she has on her docket. But under this court's cases in Bonventre and Cosme, those kinds of vague and speculative recitations of prejudice are not enough to trigger a Monsanto hearing. There's no specifics about what witnesses that she's unable to call under the CJA rates. There's no specifics about what motions she isn't filing because of the CJA rates. She hasn't given any specifics about what is different about this situation, where she's getting CJA funds and balancing the cases that she has on her docket, much like pretty much every defense lawyer has to balance cases amongst competing interests when they are preparing for trial. And so to the extent that Ms. Parks is trying to supplement the record and to try to make some argument about why the CJA rates are not sufficient here, I think it's perfectly appropriate to ask the question, you know, when Judge Schofield asked Ms. Parks at the end of January 2025 to make the consideration as to whether or not she wanted to be appointed under the CJA Act, why it's the case that 30 days later she's filing a letter to Judge Schofield saying all of a sudden that she's unable to treat this CJA client the same as all of the other paying clients that she has on her record, which is the traditional way that CJA attorneys in this district and many other districts handle their CJA cases. They treat all of their clients the same. And so because there's an inability to show any Sixth Amendment prejudice here, we fail at that initial gatekeeping step of the Monsanto analysis, and it's up to the defendant to have another opportunity to make these arguments about the merits of the forfeiture order at the end of the case at sentencing. I would add that there's a second very compelling gatekeeping issue here that the defendant is unable to really meaningfully respond to, and that's the fact that he actually doesn't have access to these funds because of a separate state court preliminary injunction. We pointed out that Judge Schofield relied on the state court preliminary injunction that was filed in November of 2022, which generally prohibits the eBury entities from making any transactions, except for any transactions that are in the ordinary and necessary course of the business of these entities. And there isn't really a great response for that because when you look at the state court record, after the criminal case was filed in January of 2024, we're talking about just a couple of weeks after the criminal case was initiated, Victim Bank One, which is the beneficiary of this state court preliminary injunction, they immediately filed a motion for contempt, finding that the fire sale of assets from the eBury assets in order to pay for Ms. Parks' defense fees found that that was a violation of the preliminary injunction's notice provisions. And so even if the restraining order here were to be lifted, the defendant has no meaningful access to these funds because of the preliminary injunction. Because we have limited time. Could I ask you to back up to that first point that you made that they fail at the threshold? And I'm trying to figure out how that fits into our review of what the district court did. In other words, what was the rationale for the district court's order? And my understanding is that the district court did not rely on the threshold argument that you're asking us to rely on. Is that correct? I would actually respectfully disagree. If you go back to the hearing of the Monsanto hearing proceedings, towards the end of that proceeding, the suggestion was made that if Ms. Parks were to be appointed under the Criminal Justice Act, that that would effectively moot the concerns with the Sixth Amendment claim. There's a portion of the colloquy where Judge Schofield- Well, I'm looking at the order that was filed on January 14th. Is that the operative decision that we're reviewing? Or are there multiple orders? Your Honor, I have the January 14th- Okay, there's a motion to vacate the PRO. Yes. And that's a, I guess it's a, what is it, a five-page order? Yes. That's what we're reviewing, right? And that's the order that's being reviewed. And I would direct the Court's attention to the very last subsection where it says, ordered that by January 20th, 2025, defendant shall file a letter including any request for appointment to counsel. But at no point did the district court say, I'm denying this for the threshold argument that you're arguing about, right? I mean, I get it. You think there may be other bases in the record on which we can affirm, and I know that that's generally true, that an appellate court can often affirm for any reason that's supported by the record. But I just want to be clear. She, the district judge, did not rule in your favor on that particular basis. She seems to say two reasons, all right? It's denied for two independent reasons, right? Neither of which is the one you led with. And again, maybe you're right, maybe you're wrong, I don't know. But that's not what the district court relied on. She said, first, the motion rests on the defendant's need to access the restrained funds, but they don't belong to him because they're payable first to EBCC, right? This is the Kaplan-Greisdell theory, right? Yes. They're somebody else's money. And then, second, the government has satisfied the burden of demonstrating probable cause to believe the assets are forfeitable. Those are the two bases the district court articulated. Yes, that is correct. So let me just ask you, in your view, would affirmance be permissible in your best case on those bases? Or are you trying to argue that if you want to win, we have to shift gear and go to the other argument that you led with? To be clear, for the court, we believe that we prevail on the merits, and we fully support ‑‑ Would you take 38 seconds to talk about that? Because that's what the district court ruled on. Yes, I'm happy to proceed to the merits, and starting with the probable cause inquiry, there was ample probable cause for Judge Schofield to find that the assets of the eBury funds ‑‑ I'm not rehearsing what facts may or may not be. Is it your view that the existence of probable cause would lead you properly, would have led the district court to rule in your favor? Yes, 100%. And would that, if we agreed with that, lead to affirmance? Yes, that is also correct. And then the Kaplan drive sale, if I'm saying that right, that theory that it's not his money, that you don't have a right under the Sixth Amendment to pay a lawyer with somebody else's money, is that also about a basis for affirmation? Yes, that is correct. Judge Schofield found probable cause that these funds are restrainable as subject to a restraining order because of a nexus that was found between these assets and the money laundering crimes that were charged in the case. The statutory interpretation that the defendant is trying to press here is a statutory interpretation that no court in this country has accepted, and as the court pointed out in the Second Circuit in Rysbeldich. This is the first time for everything. We haven't held anything. That is correct. This is an issue of first impression for us, right? That is correct. Now, I get it. Your view is that even if we agree with them about that, we shouldn't get to that issue because there's no Sixth Amendment violation from hell or high water. That's correct. The two gatekeeping issues here are the Sixth Amendment issue and the preliminary injunction. Okay. The statutory point has been decided elsewhere? Yes, Your Honor, it has. We pointed in our brief a long string set of cases that this court pointed out in Rysbeldich that included a number of circuit courts that have stood for the proposition that pretrial restraints are available in this case. And I take it that you would, if we did reach the issue, want us to basically, I guess, elevate the dicta of our footnote in Rysbeldich to a whole? Yes, we'd request that this circuit join all of the other circuits that have contemplated this issue to find the pretrial restraints available. I don't think we can logically get there because there's a condition precedent in your view, which is that there be some showing a Sixth Amendment violation and we simply don't get there. Your Honor, I think that's right. It is up to you and our view, the way that we think about the analysis, is that there's no longer a basis for a Monsanto challenge because of these preliminary gatekeeping issues. Because you only get to challenge the preliminary order of forfeiture or the seizure, or whatever is the PRO, if you've got the Sixth Amendment as your wedge into making this an interlocutorily appealable order. Exactly. That's what this court has said in Monsanto in its progeny. Let me be clear. Are you saying it would be improper to reach the statutory issue? I don't think we're saying that it would be improper. The court can decide this issue as it sees fit and find any basis in the record to affirm. If we agreed with you, it would be an alternative basis to affirm. Yes, that could be an alternative basis.  Yes. All right. Ms. Parks, you've reserved three minutes. Would you maybe just lead with a response to how the government is trying to frame this? Obviously, your side is trying to frame this appeal in a completely different way. Their view is that unless you can get before us on your core Sixth Amendment issue, that this is somehow impinging on your client's Sixth Amendment rights, we don't even get into this discussion of what's properly restrained or what's not. Would you maybe respond to that point first, even though this may take us more than three minutes? Okay. Yes, I will try. We have a Pandora's box problem, right? There was a threshold finding made by the district court in November that on the papers, we had sufficiently shown that Mr. Hanratty could not afford his defense and also that the EBRE funds were available for you for that defense. So if we want to talk about gatekeeping issues to go back even farther, that order was in November. The government never appealed that, and now we're up here on a totally different order issue. Let's start from that starting point, at least, from the government's argument that you don't effectively get to come up here and complain about the PRO, as we're calling it, unless you can make some threshold showing that your client's Sixth Amendment rights are impinged. I know, well, you tell me. I don't think that's the basis on which the district court ruled. Sorry, Your Honor. I didn't mean to cut you off. I guess I'm trying to put together the mismatch in the way the two sides are framing what we ought to be deciding, or at least ought to be deciding first. Here's what I would say, a few points, right? First of all, fundamental principle of how we do law in our federal system is that we try to avoid constitutional issues, right? If there's a black and white, or even not black and white, if there's a statutory issue, if there's a way to read a statute that avoids a constitutional issue, we don't go there, right? And so that's why we really started with the statutory issue. I say the Pandora's box phenomenon because the government's argument seems to be that if there's no constitutional, or let's be more precise, if there's no Sixth Amendment violation, it does not matter whether Congress has passed any law that would let the executive branch seize these assets, right? That seems to be the argument, and I don't know of any law that justifies that. It doesn't matter, it's just whether we would have any interlocutory power to visit that issue now. I mean, you could still take this up and you would have the district court, as you did, as a forum to entertain that constitutional or statutory claim, whatever. The question is not whether what the law says about pretrial restraint, it doesn't suggest you don't have a remedy. The question is, are we the remedy now? I mean, these three people. That's a different question. Yes, your argument. Your argument, sorry. Your Honor, I think the answer is yes, you do have jurisdiction now, as early as the first of the many Monsanto cases, right? Because this court recognized that a pretrial restraining order that potentially interferes with the defense for all the reasons we know. If your ticket through those doors is the Sixth Amendment claim, the claim that this is impinging on your client's Sixth Amendment rights, I think the government's arguing that we need to address that threshold issue first. And I guess I'm asking you why that argument isn't correct and why we can skip forward to some other thing if it turns out that they were right. If it turns out they were right. Let's say we were to agree with you, hypothetically, blank slate. This statute doesn't authorize pretrial restraint. But we also concluded that we generally don't have jurisdiction to review that as an interlocutor matter. We can only do it if we think there's a Sixth Amendment problem. I see. And we also think there is no Sixth Amendment problem here. So you're suggesting, hey, we can cut to the chase. Just let's get to the statute. And I'm asking you to react to their argument that says, you know what, you can't jump ahead to the statutory question. You must deal with the threshold question because that is the one tied to our jurisdiction. I think that's their argument. I see what you're saying, Your Honor. I can see that making sense in its own way. I mean, I don't think that that would change the fact that the district court would have jurisdiction to review its own order, et cetera. So let's assume, let's assume the government's right and we should deal with the constitutional issue first for sake of this argument, right? We went into quite some detail in our opening brief and even more on our reply brief that governmental interference with somebody's right to retain their own counts of choice using whatever money they can get for as many lawyers as they want, for as many things and bells and whistles as they want and PowerPoints and whatever, right, is in itself a structural Sixth Amendment error. And we pulled out a few example cases on this. One of them was the Gonzales-Lopez case that we discussed at some length. And that's the Supreme Court case that said that the district court's unlawful interference with the defendant's first choice counsel comprised structural error that warranted outright reversal. And why I want to focus on the Gonzales-Lopez case is there's a couple facts in that case that frankly made the Sixth Amendment issue, I'm biased, but sound less bad than it is here. Because in that case, Mr. Gonzales-Lopez still had a lot of money left. The actual, the district court error in that case was not letting his first choice guy in via pro hoc vice. So Mr. Gonzales-Lopez had plenty of money to find other lawyers. Mr. Gonzales-Lopez hired two other lawyers who represented him in the district court proceedings. Mr. Gonzales-Lopez's first choice lawyer continued to sit in the well. He went to trial. He was allowed, you know, to talk to them after hours. He just wasn't allowed to appear. And even in that case, the Supreme Court said that, no, that's a structural, a sentence of counsel error. You know, this idea that the CJA, you know, appointment in and of itself cures a violation is simply not true. Because if you're facing prison of up to 70 years in this case, you are entitled to do whatever you can that's lawful to try to stay out of prison. I will point out on the CJA point specifically, I happen to. Because we've kept you up considerably past your time. Why don't you just, unless there are other questions, just maybe hit the CJA point in 30 seconds. The CJA point in 30 seconds. Yesterday I listened to the oral argument in Luis v. United States from the Supreme Court. There was a point at about 23 minutes into the oral argument recording that Chief Justice Roberts asked the defense counsel, well, you're not asking for CJA rates, are you? And the Chief Justice starts laughing. Everybody else, it sounds like, in the room also starts laughing. There's a cascade of laughter. Because the idea that even the Supreme Court recognized in asking that question is that the CJA rates in and of itself would not cure the Sixth Amendment violation. That that client was entitled to spend as much as she lawfully could if she wanted to on her defense. So this idea that, you know, and of course, to not even get into policy issues, I mean, our public defenders work so hard. Our CJA panels work so hard. And the idea that CJA would cure a Sixth Amendment violation essentially would make the exception swallow the rule. Because everybody gets a public defender, so there's essentially no private defense bar left, if that's the rule. I think we have. Are we to understand that the government is arguing the money risk rate was not his money to begin with? I think that the theory that I understand the government to be arguing is that the Kaplan and Drysdale in those cases drew this. Never mind cases. Okay. It's a factual question. The factual question. So.  The money that's restrained is money or someone else's. The money that's restrained. So Mr. Hanratty was the manager of a series of investment funds called eBury. Is it his money or someone else's? It's not his money, but he has the contractual right to criminal defense fee advancement from that entity. It's not his money. It's not his money. Okay. He has a right to that money, though, as we go through in the cases, that if you have a reasonable expectation that that money could come to you, the Sixth Amendment is still implicated in that decision. Okay. I think unless there are any other questions. Thank you. Thank you. Very much to both sides. Very helpfully argued. We will take the case under advisement.